UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| NOEMI GOMEZ TOBIAS,<br><br>Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Deputy Commissioner of Operations, performing duties and functions not reserved to the Commissioner of Social Security,<br><br>Defendant. | Case No. CV 17-01892-DFM<br><br>MEMORANDUM OPINION AND ORDER |

Plaintiff Noemi Gomez Tobias ("Plaintiff") appeals from the final decision of the Social Security Commissioner denying her applications for Social Security Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). For the reasons discussed below, the Commissioner's decision is reversed and this matter is remanded for further proceedings.

*///*

*///*

*///*

# I.
# BACKGROUND

In June 2013, Plaintiff filed applications for DIB and SSI alleging disability beginning on November 20, 2012. See Administrative Record ("AR") 238-46. Her applications were denied. See AR 85-90. Plaintiff requested and received a hearing before an administrative law judge ("ALJ"), during which the ALJ heard testimony by Plaintiff, who was represented by counsel, and a vocational expert ("VE"). See AR 25-40.

On October 7, 2015, the ALJ issued an unfavorable decision. See AR 7-24. The ALJ found that Plaintiff had the severe impairment of degenerative disc disease of the lumbar and cervical spine, which did not meet or equal the severity of a listed impairment. See AR 13-14. The ALJ assigned Plaintiff the residual functional capacity ("RFC") to perform light work, as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except that she could stand and walk for six hours in an eight-hour day; sit for six hours in an eight-hour day; and occasionally climb, balance, stoop, crouch, and crawl, with occasional overhead reaching. See AR 15. The ALJ found, based on the VE's testimony, that Plaintiff could work as an inspector, production assembler, and shoe packer, and she therefore was not disabled. See AR 19-20.

The Appeals Council denied review of the ALJ's decision, which became the final decision of the Commissioner. See AR 1-4. Plaintiff then sought review by this Court. See Dkt. 1.

# II.
# DISCUSSION

The parties dispute whether the ALJ properly considered Plaintiff's symptom testimony. See Joint Stipulation (Dkt. 22; "JS") at 4. The parties also dispute whether the ALJ properly weighed the medical evidence from three doctors. See id.

A. **<u>Subjective Symptom Testimony</u>**

    1. **Applicable Law**

The court engages in a two-step analysis to review the ALJ's evaluation of the plaintiff's symptom testimony. <u>Trevizo v. Berryhill</u>, 871 F.3d 664, 678 (9th Cir. 2017). First, the ALJ must determine whether the plaintiff has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. <u>Id.</u> If the plaintiff meets the first step and there is no affirmative evidence of malingering, the ALJ must provide specific, clear and convincing reasons for discrediting the plaintiff's complaints. <u>Robbins v. Soc. Sec. Admin.</u>, 466 F.3d 880, 883 (9th Cir. 2006). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the [plaintiff's] complaints." <u>Brown-Hunter v. Colvin</u>, 806 F.3d 487, 493 (9th Cir. 2015) (as amended) (citation omitted). If the ALJ's credibility finding is supported by substantial evidence in the record, the reviewing court "may not engage in second[ ]guessing." <u>Thomas v. Barnhart</u>, 278 F.3d 947, 959 (9th Cir. 2002).

    2. **Analysis**

At her hearing, Plaintiff testified that she could not stand or walk for more than 20 to 30 minutes before needing to sit down, and that she could not sit down for the same period of time before needing to stand up. <u>See</u> AR 31. She stopped working after injuring her lower back working as a forklift operator, and received $1,500 in worker's compensation. <u>See</u> AR 32-33. She took Norco for the pain, which did not remove the pain completely; there was nothing else that she could do to relieve the pain, and there was no position of the body (including lying down) that relieved the pain. <u>See</u> AR 34-35. She rated her current pain as an eight out of 10, with a 10 being so severe that she had to go to an emergency room right away. <u>See</u> AR 35. Due to the pain, she

could not do "much of anything." See AR 36. She lived by herself and "tried" to perform chores around the house. See AR 37.

The ALJ gave specific, clear and convincing reasons for discrediting this testimony, to the extent it conflicted with the RFC. First, the ALJ discussed the objective medical evidence that did not support Plaintiff's claims of disabling pain. See AR 15-17. "Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in [her] credibility analysis." Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005). The x-rays taken at the time of Plaintiff's 2012 injury were normal. See AR 350. X-rays and MRIs of Plaintiff's lumbar spine from December 2012, January 2013, June 2013, and March 2014 revealed mild to moderate findings. See AR 354, 369, 561, 575. On June 9, 2015, Dr. Harlan Bleecker performed a complete consultative examination of Plaintiff which was "generally unremarkable." See AR 452-56. These records and findings support the ALJ's conclusion that, while Plaintiff suffers from back pain, her statements about her symptoms were not entirely credible.

Second, the ALJ permissibly discounted Plaintiff's credibility because her daily activities were inconsistent with her alleged limitations. See AR 17. Plaintiff reported in August 2013 that she prepares meals; does household chores such as inside cleaning, watering plants, vacuuming, laundry, and gardening; and spends time with others by visiting family members and eating out. See AR 279, 281 (Plaintiff's Function Report). Plaintiff also cares for young children at home without assistance, and can drive and do errands like going to the grocery store and post office without assistance. See AR 290, 300. Where, as here, a "claimant engages in daily activities inconsistent with the alleged symptoms," an ALJ may discredit her testimony of totally disabling impairment. Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012) (citation omitted).

Next, the ALJ permissively discounted Plaintiff's symptom testimony because her treatment involved conservative treatment. See AR 18. There was no evidence that Plaintiff used a cane or other assistive device, and her only treatment was taking pain medication. See AR 298. "[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment." Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007) (citation omitted); see also Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989) (finding that claimant's allegations of persistent, severe pain and discomfort were belied by "minimal conservative treatment"). Notwithstanding Plaintiff's argument to the contrary, the ALJ did not err in concluding that relatively conservative forms of treatment like Norco belied Plaintiff's allegation of disabling back pain. See Medel v. Colvin, No. 13-2052, 2014 WL 6065898, at *8 (C.D. Cal. Nov. 13, 2014) (considering Vicodin part of a conservative treatment routine); Gallo v. Comm'r of Soc. Sec. Admin., No. 07-01561, 2010 WL 545848, at *8 (N.D. Cal. Feb. 12, 2010) (describing epidural steroid injections as "conservative treatment"), aff'd, 449 F. App'x 648 (9th Cir. 2011). The ALJ thus validly relied on Plaintiff's conservative treatment to discount the credibility of her symptom testimony.

Finally, the ALJ properly weighed Plaintiff's "significant periods of time . . . during which the claimant has not taken any medication" for her pain against her testimony. See AR 18. The failure to seek or follow a prescribed course of treatment can be a factor in weighing a claimant's credibility. See Molina, 674 F.3d at 1112 ("We have long held that, in assessing a claimant's credibility, the ALJ may properly rely on 'unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment.'" (quoting Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008))). In January 2013, Plaintiff reported to a doctor that she was not currently taking her medications. See AR 358. She reported the same thing in

May 2013. See AR 362. Plaintiff argues that she made these statements in the context of seeking epidural steroid injections, which the insurance carrier denied; she does not contest or explain, however, her decision not to take pain medication during that time. See JS at 7.

Having relied on the objective medical evidence, Plaintiff's daily activities, Plaintiff's conservative treatment history, and Plaintiff's failure to follow a prescribed course of treatment, the ALJ provided sufficiently specific, clear and convincing reasons for discounting Plaintiff's subjective complaints about the severity of her back pain.

**B.     Medical Opinions**

   **1.     Law**

Three types of physicians may offer opinions in Social Security cases: those who treated the plaintiff, those who examined but did not treat the plaintiff, and those who did neither. See 20 C.F.R. §§ 404.1527(c), 416.927(c); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995) (as amended Apr. 9, 1996).[1] A treating physician's opinion is generally entitled to more weight than that of an examining physician, which is generally entitled to more weight than that of a nonexamining physician. Lester, 81 F.3d at 830. When a treating physician's opinion is uncontroverted by another doctor, it may be rejected only for "clear

---

[1] Social Security Regulations regarding the evaluation of opinion evidence were amended effective March 27, 2017. Where, as here, the ALJ's decision is the final decision of the Commissioner, the reviewing court generally applies the law in effect at the time of the ALJ's decision. See Lowry v. Astrue, 474 F. App'x 801, 804 n.2 (2d Cir. 2012) (applying version of regulation in effect at time of ALJ's decision despite subsequent amendment); Garrett ex rel. Moore v. Barnhart, 366 F.3d 643, 647 (8th Cir. 2004) ("We apply the rules that were in effect at the time the Commissioner's decision became final."). Accordingly, the Court applies the versions of 20 C.F.R. §§ 404.1527 and 416.927 that were in effect at the time of the ALJ's October 2015 decision.

and convincing reasons." Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008) (citing Lester, 81 F.3d at 830-31). Where such an opinion is contradicted, the ALJ may reject it for "specific and legitimate reasons that are supported by substantial evidence in the record." Id. (citations omitted).

### 2. Relevant Doctor Opinions

Dr. Alex Etemad completed an initial orthopedic evaluation on December 20, 2012. See AR 351. After physically examining Plaintiff, he diagnosed her with lumbar degenerative joint and disc disease and lumbar neuritis/radiculitis. See AR 365. Dr. Etemad opined several times between January and July 2013 that Plaintiff was temporarily impaired, was precluded from lifting over 5 pounds, should not climb, sit, or stand for over 30 minutes, and was to perform only sedentary work. See AR 360, 364, 370, 378, 380, 382, 385.

Dr. Kambiz Nourian prepared a primary treating physician's legal evaluation dated October 17, 2013, reflecting decreased range of motion of the cervical spine, tenderness to palpation in the lateral trapezius, positive spasm bilaterally, positive cervical distraction, foramina compression, and shoulder depression, positive Kemps test, positive straight leg raising test, and decreased range of motion of the lumbar spine. See AR 476. Dr. Nourian indicated that Plaintiff should never crawl or overhead lift; could occasionally pinch, reach above the shoulder, squat, kneel, crawl, lift at shoulder level, climb stairs or ladders; and could frequently grasp, fine and gross motor coordination, walk, push, pull, sit, and stand. See AR 502. Dr. Nourian opined that Plaintiff could lift and carry no more than 5 pounds. See AR 504.

Dr. George S. McCan prepared a qualified medical evaluation dated November 3, 2014, indicating diagnoses of lumbar strain, thoracic strain, and lumbar degenerative disc disease. See AR 571. Dr. McCan opined that

Plaintiff should not lift, pull, or push more than five pounds and should not frequently bend or stoop. See AR 573.

Dr. Harlan Bleecker conducted a complete consultative evaluation of Plaintiff on June 9, 2015. See AR 452-56. Plaintiff complained to him of back pain, and Dr. Bleecker found decreased range of motion of the neck and back on physical exam. See AR 453-54. The physical examination was otherwise generally unremarkable, and Dr. Bleecker diagnosed her with degenerative disc disease and arthritis of the cervical and lumbar spine. See AR 456. Dr. Bleecker opined that Plaintiff: could lift and carry 20 pounds occasionally and 10 pounds frequently; sit for 30 to 40 minutes; sit for six to eight hours in an eight-hour workday[2]; stand and walk for up to six to eight hours in an eight-hour day; did not require use of a cane; could occasionally reach overhead with either upper extremity; and could frequently reach, handle, finger, push, and pull. Id.

### 3. Analysis

The ALJ gave great weight to Dr. Bleecker's opinion and "little, if any" weight to the opinions Drs. McCan, Nourian, and Etemad. AR 18. The ALJ accordingly needed to offer specific and legitimate reasons for rejecting the latter doctors' opinions.

The ALJ reasoned that the doctors' medical records were prepared in the context of the adversarial workers' compensation claim system, and that physicians retained in this context are often biased and serve as an advocate for the claimant. See AR 18. The ALJ also noted that the definition of disability is not the same in the workers' compensation context as it is in a Social Security disability case. See id. And, finally, the ALJ noted that whether the claimant is

---

[2] The ALJ noted and discounted Dr. Bleecker's internally inconsistent opinions regarding Plaintiff's sitting abilities. See AR 18.

"disabled" is a determination reserved for the Commissioner. See id.

None of these reasons is a specific and legitimate reason on this record. An ALJ is not entitled to reject a medical opinion based on "the purpose for which medical reports are obtained." Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1200 n.5 (9th Cir. 2004) (quoting Lester, 81 F.3d at 830, and rejecting plaintiff's contention that doctor hired by workers' compensation insurance company may have been biased in evaluation); see also Heun-Davidson v. Berryhill, No. 16-1569, 2017 WL 5054657, at *6 (C.D. Cal. Nov. 1, 2017) (noting that ALJs may not disregard medical opinions simply because they were elicited in workers' compensation proceeding). Likewise, an ALJ may not reject the report of a treating physician merely because a workers' compensation determination is not controlling on the ultimate issue of disability. "That workers' compensation determinations are not controlling on the ultimate issue of disability does not mean that an ALJ can ignore the report of the physician making the determination." Franco v. Colvin, No. 12-01267, 2014 WL 790912, at *18 (E.D. Cal. Feb. 26, 2014); see also Campos v. Colvin, No. 14-00802, 2015 WL 5687640, at *9 (E.D. Cal. Sept. 25, 2015) (same). Finally, the ALJ erred by rejecting the doctors' conclusions on the basis that disability is a determination left solely to the Commissioner. To be sure, a doctor's opinion on the ultimate disability determination is not entitled to any special significance. See SSR 96-5p (providing that "treating source opinions on issues reserved to the Commissioner are never entitled to controlling weight or special significance"). But "merely because a treating or examining doctor opines that a plaintiff is disabled is not a permissible reason to reject that opinion." Daniel v. Berryhill, No. 16-0651, 2017 WL 4082368, at *3 (C.D. Cal. Sept. 13, 2017) Moreover, all three doctors offered more than just a conclusory opinion that Plaintiff was disabled; all three opined that Plaintiff had functional limitations that the ALJ did not address.

The ALJ therefore gave no specific and legitimate reasons for discounting these three doctors' opinions. An ALJ's error is harmless where it is inconsequential to the ultimate nondisability determination. Molina, 674 F.3d at 1115. Defendant argues that their opinions are inconsistent with Plaintiff's activities and other evidence of record. See JS at 27. Even were the Court inclined to agree, the ALJ did not state this as a reason for rejecting their opinions. The Court therefore cannot conclude that the ALJ's error was inconsequential to the ultimate disability determination. See Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1225-26 (9th Cir. 2009) ("Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and actual findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking.").

### C. Remand for Further Proceedings Is Appropriate

Whether to remand for further proceedings is within this Court's discretion. See Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th Cir. 2000) (as amended). Where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. See id. at 1179 (noting that "the decision of whether to remand for further proceedings turns upon the likely utility of such proceedings"); Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004).

A remand is appropriate, however, where there are outstanding issues that must be resolved before a determination of disability can be made and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated. See Bunnell v. Barnhart, 336 F.3d 1112, 1115-16 (9th Cir. 2003); see also Garrison, 759 F.3d at 1021 (explaining that courts have "flexibility to remand for further proceedings

when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act."). Here, remand is appropriate for the ALJ to properly evaluate the physicians' opinions and conduct such other proceedings as are warranted.

## III.
## CONCLUSION

For the reasons stated above, the decision of the Social Security Commissioner is REVERSED and the action is REMANDED for further proceedings.

Dated: August 16, 2018

_____
DOUGLAS F. McCORMICK
United States Magistrate Judge